IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TRACEY EDWARDS,**            Case No. 1:17 CV 925

    Plaintiff,

    v.                                   Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.            MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Tracey L. Edwards ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 11). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI in May 2014, alleging a disability onset date of June 15, 2011. (Tr. 170-75). Her claims were denied initially and upon reconsideration. (Tr. 121-24, 131-33). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 27). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on April 13, 2016. (Tr. 51-85). On August 3, 2016 the ALJ found Plaintiff not disabled in a written decision. (Tr. 44). The Appeals Council denied Plaintiff's request for review, making the hearing

decision the final decision of the Commissioner. (Tr. 1-4); *see* 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff timely filed the instant action on May 2, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in December 1966, making her 47 years old on her application date, and 44 on her alleged onset date. (Tr. 57). Plaintiff testified she lived with a friend after a brief period of homelessness. (Tr. 58). Plaintiff's friend took her "everywhere" including to all appointments. (Tr. 59). If her friend was not available, Plaintiff would not take a city bus because she was afraid to go outside by herself. (Tr. 60).

Plaintiff had past work in demolition, housekeeping, and as a home health aide. (Tr. 62-63). Plaintiff testified her inability to work began in June 2011 when she developed arthritis in her legs. (Tr. 66). At the time, Plaintiff could not stand or walk for more than 30 minutes, frequently felt dizzy, and had difficulty maintaining her balance. (Tr. 66-67). Plaintiff discovered she had a brain tumor and had it surgically removed in December 2015. (Tr. 65).

Prior to the tumor removal, Plaintiff also had trouble seeing out of her right eye. (Tr. 71). Plaintiff's children would help her walk in unfamiliar places. *Id*. Plaintiff also suffered from debilitating headaches. (Tr. 74).

In a Function Report dated July 2014, Plaintiff reported she was able to dress, bathe, and feed herself. (Tr. 213). She did not prepare her own meals. (Tr. 214). Plaintiff sat outside on her porch every day, and walked or rode in a car if she ever need to go anywhere. (Tr. 215). Plaintiff did not have a driver's license. *Id*. She talked on the phone every day, and attended church with her son. (Tr. 216). She reported no problems getting along with family or friends. (Tr. 217).

Plaintiff reported difficulty with squatting, bending, standing, walking, seeing, and completing tasks. *Id*.

Medical Records

In September 2013, Plaintiff saw family nurse practitioner Bernadette Bogdas, CNP, for pain in both legs and her lower back. (Tr. 242). Plaintiff reported intense pain in her legs while walking, which caused her to fall. (Tr. 243). Plaintiff also reported feeling depressed, and Ms. Bogdas recommended a psychiatric evaluation. (Tr. 244). On examination, Ms. Bogdas noted Plaintiff was tender throughout her lower back; she prescribed Voltaren for pain. *Id*.

In November 2013, Plaintiff was seen in the emergency room for pain in her legs and back with a syncope episode. (Tr. 330). Plaintiff was discharged with a Motrin prescription and advised to increase her fluid intake to avoid syncope. (Tr. 333).

Plaintiff returned to Ms. Bogdas in May 2014 after missing multiple appointments. (Tr. 277). Plaintiff reported depression, but had not followed up with the psychiatric evaluation ordered at her September 2013 visit. *Id*. Ms. Bogdas prescribed Wellbutrin and referred Plaintiff to a social worker and psychiatrist. (Tr. 273). On examination, Plaintiff had lower back tenderness with palpitation, a full range of motion, and good muscle strength and reflexes. *Id*.

Plaintiff saw psychologist Hershel Pickholtz, Ed.D., for a consultative psychological examination in July 2014. (Tr. 302). Plaintiff reported depression and a past suicide attempt. (Tr. 303). Plaintiff had not experienced anxiety. (Tr. 304). Dr. Pickholtz noted Plaintiff's pace and persistence fell within the low average range during the examination. *Id*. Plaintiff's description of her depressive symptoms were in the "mild range of impairment". *Id*. Plaintiff had a depressed tone of voice, with slow speech. (Tr. 305). Dr. Pickholtz noted he saw no signs of any formal thought disorder. (Tr. 306). Plaintiff had a constricted affect with depressed mood, but was not

agitated or hostile. *Id*. Plaintiff was well-oriented to time, place, and person, but had a "borderline" ability to recall five objects after a twenty-minute lapse in time. *Id*.

Plaintiff was seen at the emergency room in August 2014 for constipation/gastrointestinal issues. (Tr. 323). She denied weakness, vision problems, chest pain, or pain in her extremities (including legs). *Id*.

In September 2014, Plaintiff underwent a consultative examination with Euogio Sioson, M.D. (Tr. 312). Plaintiff reported pain in her hips and knees from arthritis. *Id*. The pain worsened at night and with activity. *Id*. Plaintiff reported her pain intensified after walking for 30 minutes, going up and down stairs, or standing for 30 minutes. *Id*. Plaintiff also had frequent headaches and "passed out" approximately six times in the previous few months. *Id*. Plaintiff stated she could lift and carry up to 25 pounds. *Id*. On examination, Dr. Sioson found Plaintiff walked normally with no assistive device, and was able to heel to toe walk, and rise from a half squat with no pain. *Id*. Vision testing revealed uncorrected "20/40" vision in both eyes. (Tr. 313). Dr. Sioson found no sensory deficit or atrophy. *Id*.

In April 2015, Plaintiff went to the emergency room via ambulance for a syncope episode. (Tr. 526). Plaintiff reported smoking some strong marijuana earlier in the day, but attributed the episode to her legs often "giving out" due to arthritis. (Tr. 527). She reported poor vision for the previous six months, as well as urinary incontinence. *Id*.

A few days later, Plaintiff followed up with nurse practitioner Pamela Crider, CNP. (Tr. 554). Plaintiff reported the emergency room visit, and reiterated her concern regarding continued dizziness and blurred vision. *Id*. On examination, Plaintiff had a "slightly unsteady gait". (Tr. 555). Ms. Crider ordered blood work, and evaluations in both neurology and ophthalmology. *Id*.

4

Plaintiff saw Jeffrey Mangel, M.D., a urogynecologist, in April 2015. (Tr. 563). Plaintiff reported urinary incontinence, and episodes where her legs "fell out" from underneath her. *Id*. She reported decreased energy, and difficulty ambulating. *Id*. Dr. Mangel diagnosed urge incontinence with a possible neurogenic origin. (Tr. 567).

In May 2015, Plaintiff saw optometrist William Roscoe, O.D., for an eye examination. (Tr. 579). Dr. Roscoe diagnosed optic nerve edema and encouraged Plaintiff to follow up with her primary care physician. *Id.*

In December 2015, Plaintiff went to the emergency room for frequent falls, hallucinations, and headaches. (Tr. 339). A CT scan revealed a large meningioma in her cranium. *Id*. On December 23, 2015, Plaintiff had surgery to remove the mass. (Tr. 374). The surgery was performed by neurosurgeon Nicholas Bambakidis, M.D. *Id*. Ophthalmologist Michael Morgan, M.D., was consulted for an evaluation due to Plaintiff's report of blurred vision following the surgery. (Tr. 371). Dr. Morgan found Plaintiff had difficulty with superior gaze, as she could only count fingers at four feet on the right and two feet on the left. (Tr. 373). Dr. Morgan's impression was post-meningioma status with preoperative midline shift, Parinaud syndrome (likely from preoperative hydrocephalus), and bilateral vision loss. (Tr. 372-73). Plaintiff was discharged to rehabilitation on January 4, 2016 to complete occupational, physical, and speech therapy. (Tr. 361).

Plaintiff attended rehabilitation from January 5, 2016, through January 9, 2016. (Tr. 593). While in the rehabilitation facility, Plaintiff was pleasant and alert with good motor strength. (Tr. 593). On January 9, 2016, Plaintiff was transferred from the inpatient rehabilitation facility to the emergency room due to increased lethargy, mental status changes, and elevated temperature. (Tr. 594). At the hospital, Plaintiff was treated with antibiotics and underwent a CT scan and an MRI,

which revealed extracranial right frontal fluid collection and diffusion restriction in the left midbrain likely secondary to brainstem compression. (Tr. 466, 470, 483-84, 486). On January 15, 2016, Plaintiff was discharged back to the rehabilitation facility. (Tr. 470, 670).

While at the rehabilitation facility, Plaintiff underwent a program of comprehensive therapies that included inpatient therapy, physical therapy, occupational therapy, speech therapy, and nursing interventions. (Tr. 671). Plaintiff had "4/5" motor strength in her upper and lower extremities. *Id*. She had fair comprehension with "slow" cognitive processing. *Id*. Plaintiff had continued visual impairment and required significant assistance for navigation and safety. *Id*. On January 28, 2016, Plaintiff was discharged to a nursing home for continued rehabilitation. (Tr. 672). She remained there until February 22, 2016, when she was discharged to her home with a walker. (Tr. 821).

In March 2016, Plaintiff returned to Dr. Bambakidis for a post-op appointment. (Tr. 815). Plaintiff complained of blurry vision, but reported no headaches or other symptoms. *Id*. On examination, Dr. Bambakidis found Plaintiff's surgical wound well-healed; Plaintiff was neurologically intact, with mild gait unsteadiness and some vision loss. *Id*. Dr. Bambakidis referred Plaintiff to outpatient physical therapy. *Id*.

Opinion Evidence

*Examining Physicians*

*Dr. Pickholtz*

In July 2014, Dr. Pickholtz opined Plaintiff's psychiatric impairments caused some limitations, but did not preclude her from working. (Tr. 307). He opined Plaintiff would likely improve with psychiatric monitoring and medication. *Id.* Dr. Pickholtz opined Plaintiff's ability to understand, remember, and carry out instructions was "slightly impaired at worst." (Tr. 308). Her

ability to respond to pressures in a work setting was "somewhat impaired at worst but not preclusive of work and would improve with future psychiatric monitorship [sic] and medication regimentation." *Id.*

### *Dr. Sioson*

At the consultative examination in September 2014, Dr. Sioson opined "if one considers limitation of range of motion from pain and above findings, work-related activities would be limited to light work." (Tr. 312).

### *Reviewing Physicians*

In September 2014, state agency psychologist Katherine Fernandez, Psy.D, reviewed Plaintiff's medical records. (Tr. 97). Dr. Fernandez found Plaintiff could perform simple, repetitive tasks. (Tr. 99). She was not significantly limited in her ability to carry out short, simple instructions, perform on a schedule, make simple work-related decisions, sustain a routine without supervision, or complete a workday without interference from psychologically based symptoms. (Tr. 99-100). Plaintiff was moderately limited in her ability to carry out detailed instructions, and maintain extended concentration. (Tr. 100).

That same month, state agency physician Sreenivas Venkatachala, M.D., reviewed Plaintiff's records and concluded Plaintiff did not have a severe physical impairment. (Tr. 96). This opinion was later affirmed by state agency physician William Bolz, M.D., who reviewed the file in December 2014. (Tr. 110).

In February 2015, on reconsideration, state agency psychologist Aracelis Rivera, Psy.D., reviewed Plaintiff's file and determined there was insufficient evidence to evaluate her claim. (Tr. 111-12).

VE Testimony

A VE testified at the hearing before the ALJ. *See* Tr. 79-84. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was limited in the way ultimately determined by the ALJ. (Tr. 80-81). The VE opined such an individual could perform Plaintiff's past work as a housekeeper. (Tr. 81). Further, the VE opined such an individual could perform other light exertional work such as a merchandise marker, cafeteria attendant, and hand packager. *Id.*

ALJ Decision

The ALJ made the following findings of fact and conclusions of law in his August 3, 2016 decision:

> 1. The claimant has not engaged in substantial gainful activity since May 13, 2004, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: meningioma, status post right craniotomy with resection and subsequent embolization of tumor feeding vessels; depression; and personality disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can never climb ladders, ropes, or scaffolds; can occasionally balance, and can occasionally stoop. She can never be exposed to unprotected heights or moving mechanical parts or engage in commercial driving. She is limited to simple, repetitive tasks, and can have frequent interactions with supervisors, co-workers, and the public.
>
> 5. The claimant is capable of performing past relevant work as a cleaner, housekeeping. This work does not require the performance of work-related

8

activities precluded by the claimant's residual functional capacity. (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since May 13, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 31-44).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

9

than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the RFC determination is not supported by substantial evidence because it was not based on any recent medical opinions, and instead formulated based on the ALJ's own independent medical findings. (Doc. 16, at 15). Further, Plaintiff argues remand is warranted for

10

the consideration of new and material evidence. *Id*. The Commissioner responds that the RFC is supported by substantial evidence. For the reasons discussed below, the undersigned affirms the decision of the Commissioner.

Residual Functional Capacity

A claimant's RFC is defined as "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1)(i). However, it must be supported by substantial evidence. In formulating the RFC, the ALJ is not required to adopt any physician's opinion verbatim. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). As the Sixth Circuit recently explained:

> Shepard also argues that the ALJ's RFC lacks substantial evidence because no physician opined that Shepard was capable of light work. But "the *ALJ* is charged with the responsibility of determining the RFC based on *her* evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July, 2, 1996). "[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728.

*Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-Aljahmi v. Comm'r*, -- F. App'x --, 2018 WL 2017564, at *5 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ . . . . We

11

similarly find no error here. The ALJ undertook a laborious evaluation of the medical record when determining the residual functional capacity, and substantial evidence supports the ALJ's conclusions.") (rejecting the argument that "once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity").

Plaintiff argues the ALJ erred in making a RFC decision in the absence of a medical opinion by a provider who had the opportunity to review a substantial amount of claimant's medical records. (Doc. 16, at 12). She points to *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008), in support. *Id*. Specifically, Plaintiff argues the "bulk" of the evidence in the record arose after the state agency physicians performed their examination and record reviews. (Doc. 16, at 13).

The district court in *Deskin* explained that "as a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining Agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* Further, the court explained, "the ALJ may not interpret raw medical data in functional terms." *Id.* However, *Deskin* also provided that "[a] medical source may not be necessary in every case", *id.*, and other courts have noted *Deskin* has been "criticized by other judges within this District", *Adams v. Colvin*, 2015 WL 4661512, at *15 (N.D. Ohio). Specifically, in *Henderson v. Comm'r of Soc. Sec.*, 2010 WL 750222 at *2 (N.D. Ohio), the court found that "Deskin . . . is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." In so holding, the court relied upon the statutes requiring an ALJ—not a physician—to determine a claimant's RFC based on the evidence as a whole. *Id.*

(citing 20 C.F.R. §§ 416.946(c), 416.927(e)(2); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96–5p, 1996 WL 374183, SSR 96–8p, 1996 WL 374184). Given the Sixth Circuit's recent pronouncements noted above, *see Shepard*, 705 F. App'x at 442-43; *Mokbel-Aljahmi*, -- F. App'x --, 2018 WL 2017564, at *5, the undersigned finds no *per se* error in an ALJ making an RFC determination without medical opinion evidence regarding each specific restriction because, as noted above, there could be other evidence of record that supports his decision. And, as discussed further below, the ALJ's RFC determination is supported by substantial evidence. Further, it is not error for an ALJ to rely on medical opinions from physicians who have not reviewed the entire record so long as the ALJ considers the post-dated evidence in formulating her opinion. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence developed post-dating those opinions).

> The ALJ found Plaintiff had the RFC:
>
> to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can never climb ladders, ropes, or scaffolds; can occasionally balance, and can occasionally stoop. She can never be exposed to unprotected heights or moving mechanical parts or engage in commercial driving. She is limited to simple, repetitive tasks, and can have frequent interactions with supervisors, co-workers, and the public.

(Tr. 36). In formulating the RFC, the ALJ thoroughly reviewed the medical evidence of record – both before and after Plaintiff's surgery, as well as Plaintiff's testimony, and opinion evidence. *See*. Tr. 31-44.

First, as to Plaintiff's physical limitations, the ALJ appropriately considered that Plaintiff "rarely sought [medical] treatment until December 2015", and, at those visits, only reported "some

13

joint and back pains" related to arthritis, which suggested an "intact function" . (Tr. 37) (citing Tr. 243); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) ("Modest treatment is inconsistent with a finding of total disability."). And, as the ALJ points out, Plaintiff was never actually diagnosed with arthritis by an acceptable medical source. (Tr. 34). She consistently had good strength, normal range of motion in the joints, and normal reflexes on examination. (Tr. 37) (citing 243, 273, 312-13, 325, 332). Here, due to her limitations, the ALJ reasonably limited Plaintiff to avoiding unprotected heights, moving mechanical parts, and limited her to simple, repetitive tasks. (Tr. 36). After careful review of the record, the ALJ reasonably found it did not reflect the need for more restrictive limitations. *Id*.

The ALJ also pointed to evidence of record following Plaintiff's brain surgery. He noted that, at a March 2016 post-operative care appointment, Plaintiff complained of blurred vision, but denied any recurrence of headaches or other symptoms. (Tr. 39) (citing Tr. 815). Plaintiff was referred for outpatient physical therapy, and Dr. Bambakidis indicated Plaintiff was doing well. *Id*. Finally, the ALJ pointed out there were no other records presented indicating Plaintiff sought follow-up screening or treatment after this visit. (Tr. 39).

Second, regarding Plaintiff's mental health impairments, the ALJ noted "the evidence of record shows some functional limitation, but minimal treatment and relatively benign examinations [] are inconsistent with the disabling limitations alleged." (Tr. 40). As an example, the ALJ cited a May 2014 examination by Ms. Bogdas where Plaintiff complained of depression. (Tr. 40) (citing Tr.273). Ms. Bogdas prescribed Wellbutrin and referred Plaintiff for psychiatric care. (Tr. 273). Plaintiff did not seek further mental health treatment from her primary care provider, and never followed up with the psychiatrist. As noted above, lack of treatment is inconsistent with a finding of disability. *See Helms*, 405 F. App'x at 1001.

Additionally, the ALJ may consider the nature of a claimant's daily activities in evaluating a disability claim. *See* 20 C.F.R. § 416.929(c)(3)(i). The ALJ properly emphasized Plaintiff's testimony regarding her daily activities in evaluating both her mental and physical limitations: "[Plaintiff] admitted activities of daily living including independent personal care, cooking, laundry, light cleaning, talking on the phone daily, and going to church weekly with family." (Tr. 40) (citing Tr. 213-16). He appropriately found "some of the physical and mental abilities and social interaction required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (Tr. 40). Further, the ALJ also pointed to Plaintiff's testimony that she applied for jobs at fast food restaurants and hotels prior to her brain surgery and noted she would have been able to perform the job if she was hired. (Tr. 40) ("this suggests she was capable of working, and our regulations consider statements made against self-interest to be highly probative, undermining the claimant's allegations of disability.") (citing Tr. 68); 20 CFR § 416.929 (the ALJ will consider statements about the intensity, persistence, and limiting effects of the claimant's symptoms, and will evaluate the statements in relation to the objective medical evidence.)

The ALJ's mental RFC determination is also supported by medical opinion evidence. He granted "great weight" to Dr. Pickholtz's opinion that Plaintiff had – "at worst "– a slight impairment in her ability to understand, remember, and carry out simple instructions and perform one to three step tasks. (Tr. 41) (citing Tr. 307-08). The ALJ found Dr. Pickholtz's opinion consistent with Plaintiff's mild reported symptoms. (Tr. 41) (citing Tr. 306) ("[Plaintiff] experiences depression everyday [sic] for about 20 minutes and the severity was described as being mild."). Further, in assessing Plaintiff's mental impairments, the ALJ pointed to Plaintiff's lack of mental health treatment, and noted Dr. Pickholtz was the only examining psychiatrist to provide

15

an opinion on Plaintiff's condition. (Tr. 41); *Helm*, 405 F. App'x at 1001 ("Modest treatment is inconsistent with a finding of total disability."). The ALJ gave "great weight" to state agency psychologist Dr. Fernandez, because her findings were consistent with those of Dr. Pickholtz. (Tr. 41). As noted above, however, an ALJ's RFC determination does not need to necessarily rely on a medical opinion – the RFC is an administrative finding ultimately reserved for the Commissioner. *See Shepard*, 705 F. App'x at 442-43. The Sixth Circuit has emphasized that "to require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Id*. (quoting *Rudd*, 531 F. App'x at 728).

In sum, the undersigned finds the RFC is supported by substantial evidence and affirms the decision of the Commissioner in this regard.

<u>Sentence Six Remand</u>

Plaintiff next argues a sentence six remand is warranted for the consideration of new and material evidence about Plaintiff's vision loss. (Doc. 16, at 15). In support, Plaintiff points to a supposed May 2016 examination by Dr. Morgan wherein he outlined the severity of Plaintiff's continued visual impairments. (Doc. 16, at 7). In her brief, Plaintiff details Dr. Morgan's findings and cites to an "attached" document – presumably a medical record from the examination. *Id*. Unfortunately, there were no documents "attached" to Plaintiff's brief (Doc. 16), and none are reflected in the docket sheet.

The Commissioner's brief pointed out the omission (Doc. 17, at 19), providing Plaintiff notice and ample opportunity to respond and submit the attachment. She did not do so.

Because the Court cannot evaluate "new and material evidence" that is not provided, the undersigned denies Plaintiff's request for a sentence six remand.

16

**CONCLUSION**

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI supported by substantial evidence and affirms that decision.

s/James R. Knepp II
United States Magistrate Judge
